IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| VICKIE CONDOR, | § | |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-1751-BF |
| | § | |
| MICHAEL ASTUE | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a consent case before the undersigned United States Magistrate Judge. Plaintiff Vickie Condor ("Condor") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner"), who denied her claim for disability benefits under Title II of the Social Security Act (the "Act"). Before the Court are **Plaintiff's Brief**, filed December 3, 2009; **Defendant's Brief**, filed February 1, 2010; and **Plaintiff's Reply Brief**, filed February 16, 2010. Having reviewed the evidence of the parties in connection with the pleadings, the Court finds that the final decision of the ALJ should be **AFFIRMED**.

### I. Background[1]

*A. Procedural History*

Condor filed her application for Title II disability benefits on September 11, 2006, claiming an onset date of July 1, 2000. (Tr. 12.) Condor later amended her date of onset to February 1, 2006.

---

[1] The following background facts come from the transcript of the administrative proceedings, which is designated as "Tr."

(Tr. 430.) Condor claimed disability due to knee, leg, neck, shoulder, back and anxiety problems, bladder infections, hepatitis C, breathing difficulty, and chronic gastritis. (Tr. 14; 101-16; 169.) After her application was denied both initially and upon reconsideration, Condor filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 12.) ALJ Walter Orr presided over Condor's hearing on March 17, 2008. (Tr. 23.) ALJ Orr issued an unfavorable decision on April 21, 2008. (Tr. 15-22.) On July 29, 2009, the Appeals Council denied Condor's request for review, thereby rendering the ALJ's unfavorable decision the final decision of the Commissioner. (Tr. 2-4.) Condor filed this instant suit in the U.S. District Court for the Northern District of Texas, Dallas Division on September 21, 2009. The case is now ripe for consideration.

Condor contends that: (1) the ALJ failed to give proper weight to treating and examining source opinions when determining whether Condor met or medically equaled a listing; and (2) the residual functional capacity ("RFC") formulated by the ALJ is not supported by substantial evidence. (P.'s Br. 11; 19.) The Commissioner counters that: (1) the ALJ properly discounted Condor's treating and examining physician's opinion and found Condor did not meet a listing; and (2) the ALJ property determined Condor's RFC. (D.'s Br. 4; 9.)

**B. Factual History**

1.  Plaintiff's Age, Education and Work Experience

Condor's birthday is December 26, 1957. (Tr. 101.) She has a general equivalency degree ("GED"). (Tr. 174.) In her past relevant work, she was a truck driver, home builder, cashier, short order cook, and sales clerk. (Tr. 114; 125-30; 440.)

2.  Plaintiff's Medical Evidence

The Court will only discuss the medical evidence of record which is relevant to the issues

raised by the parties. In her disability report, dated November 16, 2006, Condor stated she was disabled due to hip, back, knee and neck problems, anxiety disorder, depression, bladder and kidney trouble, and hepatitis C. (Tr. 153-57; 168-70.) Condor reported that she began experiencing symptoms as of July 1, 2000, but she continued to work without any special provisions until February 1, 2006. (Tr. 176.) As noted above, she originally claimed a disability onset date of July 1, 2000 but later amended this date to February 1, 2006. (Tr. 169; 430.)

Condor's earliest medical records are with Dr. David Merkin ("Dr. Merkin") in September 2004. (Tr. 321-323.) Dr. Merkin noted that Condor reported symptoms of anxiety and nervousness. (*Id.*) Condor's medical records from 2005 indicate that she has hepatitis C, however the record does not indicate any disabling conditions associated with hepatitis C. (Tr. 14-5; 206; 248.) Condor's medical records indicate she did not see a physician for her symptoms again until 2007. (Tr. 204-09.)

On January 9, 2007, Condor's medical records indicate a diagnosis of bipolar disorder, panic disorder and a Global Assessment of Functioning ("GAF") score of 43.[2] (Tr. 205.) On January 10, 2007, Condor was diagnosed with osteoarthritis and patellofemoral arthritis. (Tr. 206.) Additionally, due to her unsuccessful cystopexy, she has chronic urinary tract infections. (Tr. 207.) On January 30, 2007, Donna Haynes, a registered nurse, reported that Condor can sit and stand for a maximum of two hours and walk for a maximum of thirty minutes, cannot climb stairs or ladders, cannot kneel or squat, can carry only up to two to three pounds for a few minutes, and may not carry more than three pounds for more than one hour per day. (Tr. 205-06.) On February 21, 2007, Carla Herren,

---

[2] A GAF score represents a clinician's judgment of an individual's overall level of functioning. *See* American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. Text rev. 2000) (DSM). A GAF score of 41-50 indicates serious symptoms and/or a serious impairment in social, occupational, or school functioning. *See id.*

Ph.D reported that Condor has started to hallucinate and hear voices in her head. (Tr. 205.) Dr. Herren also reported that Condor is incapable of managing her own finances due to bipolar disorder and panic disorder. (*Id.*)

On April 40, 2007, Condor was reported as having an increased level of anxiety and a GAF score of 43. (Tr. 209.) Records from Condor's doctor visits on June 11, July 24 and October 2, 2007 note that she has a GAF score of 43. (*Id.*) However, on March 17, 2007, Caren Phelan, Pd.D. reported that, as of February 2007, Condor's GAF score had increased from 43 to 55 in one month due to her medical regimen.[3] (Tr. 341-53.)

On November 30, 2007, George R. Mount, Ph.D. interviewed Condor and noted that she has significant emotional distress, mood swings, behavior consistent with bipolar disorder, and a GAF score of 40.[4] (Tr. 207; 214.) In an RFC Assessment, Dr. Mount noted that Condor has a poor ability to follow work rules, relate to coworkers, deal with the public, interact with supervisors, or behave in an emotionally stable manner, and she cannot understand, remember, or carry out complex job instructions. (Tr. 208.)

3. <u>Plaintiff's Hearing</u>

Condor's hearing took place on March 17, 2008. (Tr. 23.) She was represented by her attorney, Catherine I. Coats. (Tr. 12.) As with the medical evidence, the Court will only relate those portions of the hearing which bear on the issues raised by the parties.

The Vocational Expert ("VE") testified that if a younger individual were classified as

---

[3] A GAF score of 51-60 indicates moderate symptoms or a moderate difficulty in social, occupational or school functioning. *See* DSM 34.

[4] A GAF score of 31-40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. *See* DSM 34.

4

sedentary, there would be a range of unskilled jobs available to the individual. (Tr. 441.) The VE also testified that a younger individual who is capable of performing unskilled labor but requires minimal contact with the public could perform the jobs of a garment bagger, bakery worker, and small products assembler. (Tr. 445.) However, the VE testified that an individual would be unable to maintain employment if she had the following limitations: ability to sit for only two hours; ability to stand for only two hours; ability to walk for up to thirty minutes at a time; no ability to climb stairs, kneel or squat; no ability to follow work rules, no ability to relate to the public, interact with supervisors and be polite to coworkers; no ability to deal with work stress; no ability to maintain attention and concentration; and no ability to behave in an emotionally stable manner, react predictably in social situations or demonstrate reliability. (Tr. 442-43; 446.) Additionally, the VE testified that an individual who was moderately limited in the following functions would be unable to maintain employment: limited ability to remember locations and work-wide procedures; limited ability to complete a normal work day and work week without interruptions from psychologically based symptoms; limited ability to perform at a consistent pace without an unreasonable number and length of rest periods; limited ability to accept instructions and respond appropriately to criticism from supervisors; and limited ability to travel to unfamiliar places or use public transportation. (Tr. 442-43.)

The medical expert ("ME") testified that Condor has bipolar disorder and anxiety disorder. (Tr. 432.) The ME also testified that the validity of Dr. Mount's conclusions were questionable because the computer generated report indicated some level of carelessness in responding or some confusion from Condor. (Tr. 433.) The ME also testified that Condor is able to work because her bipolar and anxiety symptoms had improved and that she did not meet or equal a listed impairment.

(*Id.*) Additionally, the ME also testified that Condor had a GAF score of 50, not 40. (Tr. 436.)

### *C. ALJ's Findings*

The ALJ issued an unfavorable decision on April 21, 2008. (Tr. 22.) First, the ALJ determined that Condor had not engaged in substantial gainful activity since February 1, 2006. (Tr. 14.) Second, the ALJ determined that Condor had the following severe impairments: osteoarthritis with degenerative joint disease of the right knee and spine, depression, and anxiety. (*Id.*) Third, the ALJ determined that Condor did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix I of the Regulations. (Tr. 15.) Fourth, the ALJ determined that between February 1, 2006 and April 21, 2008, Condor was unable to perform any past relevant work. (Tr. 20; 22.) Fifth, the ALJ determined that since February 1, 2006, Condor, a younger individual, had the RFC to perform unskilled light work involving minimal contact with the public. (Tr. 21-22.) The ALJ ultimately concluded that Condor was not under a "disability," as defined by the Act, at anytime between February 1, 2006 and the date of decision. (Tr. 22)

## **II. Legal Standard**

To be entitled to social security benefits, Condor must prove that she is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work she has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove his disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized.

*Greenspan*, 38 F.3d at 236; 42 U.S.C.A. § 405(g) (West Supp. 1999). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather it scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

Having reviewed the applicable legal standards, the Court now turns to the merits of the case.

### III. Analysis

As noted above, Condor challenges the ALJ's unfavorable decision on the basis that: (1) the ALJ failed to give proper weight to treating and examining source opinions when determining whether Condor met or medically equaled a listing; and (2) substantial evidence does not support the RFC formulated by the ALJ. (P.'s Br. 11; 19.) The Commissioner counters that: (1) the ALJ properly discounted Condor's treating and examining physician's opinion and found Condor did not meet a listing; and (2) the ALJ property determined Condor's RFC. (D.'s Br. 4; 9.)

#### A. Treating Source's Opinions

Condor first alleges that the ALJ failed to give proper weight to her treating physician's opinion when determining whether she met or medically equaled a listing. (P.'s Br. 11; 13.) The opinion of treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On

the other hand "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).The ALJ must evaluate: (i) the [l]ength of the treatment relationship and the frequency of examination; (ii) the [n]ature and extent of the treatment relationship; (iii) the supporting evidence presented by the physician; (iv) the level of consistency between the physician's opinion and the record; (v) the physician's specialization; and (vi) any other relevant factors. 20 C.F.R. § 404.1527(d)(2)-(6).

In the instant case, Dr. Mount, who specializes in clinical psychology, saw Condor one time in 2007. (Tr. 207; 212.) In rejecting Dr. Mount's opinion the ALJ considered that Dr. Mount cannot be considered a treating physician because he only interviewed Condor once and administered a test. (Tr. 19-20.) The ALJ also rejected Dr. Mount's opinion based on the ME's opinion that the test Dr. Mount used was not reliable because the test results raised questions about the validity of the test. (*Id.*) Additionally, the ME testified that the medical tests Dr. Mount performed are insufficient to conclude that Condor is disabled because the test is an older test the Social Security Administration used to use. (Tr. 431-37.) The ALJ determined that Dr. Mount's opinion is based only Condor's statements, not medically acceptable diagnostic techniques. (*Id.*) Furthermore, Dr. Mount's findings are inconsistent with other evidence in the case record. (*Id.*) Dr. Mount reported Condor as having a GAF of 40 on November 30, 2007. (Tr. 207.) However, on March 17, 2007, Dr. Phelan reported that Condor had a GAF of 55. (Tr. 207; 214.) Additionally, the ME testified that Dr. Mount incorrectly assessed Condor's GAF at 40, and that it should have been at 55. (Tr. 436.) The ME explained that the GAF score assigned by Dr. Mount did not reflect Condor's improvement.

(Tr. 438.)

While the ALJ may not have specifically addressed each of the factors in perfect narrative fashion, there was adequate consideration of the listed factors. *See Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994). The Court finds that the ALJ's decision to reject Dr. Mount's opinion is supported by substantial evidence. The ALJ properly rejected Dr. Mount's opinion with good cause.

### B. The RFC Determination

Condor also alleges that substantial evidence does not support the RFC formulated by the ALJ. Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The ALJ determined that based on her age, education, work experience, medical conditions, and limitations Condor retained the RFC to perform light work with minimal public contact. (Tr. 22.) Based on this RFC, the ALJ found that Condor could perform work as a garment bagger, bakery worker, or small products assembler. (Tr. 21.)

Although Condor was diagnosed with bipolar disorder, hepatitis C, depression and osteoarthritis and patellofemoral arthritis, the record shows she is only moderately limited in her ability to remember work like procedures, complete a normal workday and workweek, to get along with coworkers, and respond appropriately to changes in the work setting. (Tr. 204.) The ALJ pointed out that Condor is stable when on her medication. *See Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1990) (holding that a medical condition that can be remedied by medication is not disabling). Additionally, Dr. Mount never reported that Condor is unable to work. (Tr. 212-14.)

In recommending that Condor is able to perform light work limited by minimal contact with

10

the public, the ALJ considered all of Condor's medical conditions and her limitations, such as her inability to bend down. (Tr. 21.) The ALJ found that Condor has the severe impairment of osetioarthritis, but noted that a consultative examination showed that Condor displayed free range of motion in all planes and normal curvature. The exam also noted that Condor had free range of motion in all extremity joints, including her right knee. The ALJ further noted that an x-rays showed osteoarthritic changes in the knee joint and degenerative changes in the dorsal spine. The ALJ pointed out that the state agency medical consultant found that Condor had normal muscle strength in all extremities, normal gait and station, and that she could toe, heel, and tandem walk.

Plaintiff argues that the ALJ should have considered her bladder and bowel incontinence in determining her RFC. However, the only medical evidence in the record pertaining to Condor's incontinence is from 2005, before her alleged onset date of disability. The diagnosis of an impairment does not establish a disabling impairment or even a significant impact on that person's functional capacity. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (noting that the mere presence of some impairment is not disabling per se). Although she testified to incontinence problems, the ALJ properly found her testimony to be not credible due to inconsistencies with the objective medical findings. *See Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988) (finding that an ALJ's credibility determination is entitled to considerable deference). Therefore, the ALJ properly excluded any limitations resulting from incontinence. The Court finds that substantial evidence supports the ALJ's RFC determination.

### IV. Conclusion

Because the ALJ gave proper weight to Condor's treating physician and there is substantial evidence to support the ALJ's RFC, the Commissioner's decision is hereby **AFFIRMED**.

SO ORDERED, March 23, 2011.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE